UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**GORDON SCOTT FLEMING,**

          **Plaintiff,**

-vs-                                                        **Case No. 6:10-cv-242-Orl-GJK**

**COMMISSIONER OF SOCIAL SECURITY,**

          **Defendant.**

_____

# ORDER

    Gordon Scott Fleming (hereafter "Fleming"), appeals from a final decision of the Commissioner of Social Security (hereafter "Commissioner") denying his application for benefits. Doc. No. 1. Fleming raises seven arguments in support of reversing the Commissioner's decision. Doc. No. 19. The issue this Court finds dispositive, however, is the Commissioner's exclusive reliance on the medical vocational grids in determining that Fleming was not disabled. For the reasons set forth below, the final decision of the Commissioner is **REVERSED and REMANDED** for further proceedings pursuant to sentence four of Section 405(g) because the ALJ erred by relying exclusively on the medical vocational grids.

**I.      BACKGROUND**

    On May 15, 2008, Fleming applied for both social security disability benefits and supplemental security income. R. 98-100, 106-09. In both applications, Fleming listed his date of birth as August 15, 1963. R. 98, 106. Fleming listed the onset date of his disability as July 31, 2003, on his application for social security disability benefits. R. 98. However, in his

application for supplemental security income, Fleming listed January 1, 2003, as the onset date of his disability.  R. 106.

On August 1, 2008, Fleming's applications for social security disability benefits and supplemental security income were denied.  R. 50, 53.  In denying Fleming's request for reconsideration of these denials, the Commissioner acknowledged Fleming was claiming disability "because of back pain, anxiety disorder, bipolar disorder and obsessive compulsive disorder."  R. 58; *also see* R. 65.  However, the Commissioner concluded that Fleming's conditions were not severe enough to prevent him from working.  R. 58, 65.  On November 4, 2008, Fleming requested a hearing before an Administrative Law Judge (hereafter "ALJ").  R. 67.  On June 2, 2009, the hearing before the ALJ was held and Fleming was the only person that testified.  R. 18-44.

At the hearing, Fleming testified about the various jobs he held:  pulling orders at a publishing company, working at a golf course, lawn maintenance, delivery driver, telemarketing, dishwasher and cashier.  R. 23-25, 29-30, 36-37.  Fleming also testified that he suffered from "OCD, anxiety, and I'm bipolar."  R. 25.  In addition to these mental impairments, Fleming testified that he suffered a back injury in 1989 that required four surgeries and causes him constant pain.  R. 25-26.  Later, he broke his knee.  R. 29.  Fleming testified about the limitations these impairments created for him and that he was attending school to work as a medical secretary or in medical coding.  R. 26.

On August 28, 2009, the ALJ issued a decision finding Fleming not disabled.  R. 6-17.  Fleming requested review of the ALJ's decision by the Appeals Council; this request was denied on January 5, 2010.  R. 1-4.  On February 10, 2010, Fleming appealed the Commissioner's final

decision to this Court. Doc. No. 1. On August 9, 2010, Fleming filed his memorandum of law, raising seven issues in support of reversing the Commissioner's final decision. Doc. No. 19. On September 30, 2010, the Commissioner filed his memorandum of law in opposition. Doc. No. 21.

After reviewing the record and memoranda, this Court, *sua sponte*, ordered the parties to provide supplemental briefing on the following issue: whether the ALJ utilized the correct legal standard when he relied solely on the medical vocational grids to conclude Fleming was not disabled, in light of his finding that Fleming suffered from three severe non-exertional mental impairments. Doc. No. 24. The parties filed their supplemental briefs on June 30 and July 1, 2011, respectively. Doc. Nos. 25-26. The Court now addresses Fleming's appeal.

## II.      ALJ's DECISION

In his written decision, the ALJ made the following findings:

1. Fleming meets the insured status requirements of the Social Security Act through March 31, 2011;

2. Fleming has not engaged in substantial gainful activity since July 31, 2003, the alleged onset date of his disability;

3. Fleming <u>suffers from the following severe impairments</u>: back, bipolar, anxiety and affective disorder;

4. Fleming does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1; The ALJ expounded upon this finding:

    a. Fleming only has a mild restriction performing daily living activities;
    b. Fleming has mild difficulties in social functioning;
    c. Fleming has moderate difficulties with concentration, persistence or pace;
    d. Fleming has not experienced any episodes of decompensation that were of extended duration.

5. Fleming <u>has the "residual functional capacity to perform a minimally reduced range of</u>

light work . . . ." Fleming can lift and carry 10 pounds frequently and 20 pounds occasionally; he can sit, stand or walk for six hours in an eight hour work day; he can occasionally "climb ramps, stairs, balance, stoop, kneel, crouch, and crawl, but should never climb ladders, rope or scaffolds." Fleming also can perform routine repetitive tasks.

6. Fleming cannot perform any past relevant work;

7. Fleming was born on August 15, 1963, making him 39 years old on the alleged onset date of his disability;

8. Fleming has a limited education and is able to communicate in English;

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the Claimant is "not disabled," whether or not he has transferable job skills;

10. In light of his age, education, work experience, and residual functional capacity, Fleming can perform a number of jobs that exist in significant numbers in the national economy; and

11. Fleming has not been under a disability, as defined in the Social Security Act, from July 31, 2003, through the date of this decision.

R. 11-17 (emphasis added). In summary, the ALJ found Fleming had severe non-exertional impairments, could perform a "minimally reduced range of light work" and, using the medical vocational grids, determined Fleming was not disabled. R. 11, 13, 16.

The ALJ found that Fleming suffered from the severe impairments of back, bipolar, anxiety and affective disorders. R. 11. In regards to whether Fleming could perform any work in light of his age, education, work experience and residual functional capacity, the ALJ states:

> In determining whether a successful adjustment to other work can be made, the undersigned must consider [Fleming's] residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If [Fleming] can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon [Fleming's] specific vocational profile. When the claimant cannot perform

-4-

> substantially all of the exertional demands of work at a given level of exertion and/or <u>has nonexertional limitations, the medical-vocational rules are used as a framework for decision-making</u> unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations. If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decision making.
>
> If [Fleming] had the residual functional capacity to perform the full range of light work, considering [Fleming's] age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 202.18. However, the additional limitations have little or no effect on the occupational base of unskilled light work. A finding of "not disabled" is therefore appropriate under the framework of this rule.

R. 16-17 (internal citations omitted) (emphasis added). Relying solely on the medical vocational grids, the ALJ determined that Fleming is not disabled. R. 16-17.

### III.   ISSUE

Although Fleming raises seven issues for reversal, this Court finds that the dispositive issue is whether the ALJ erred in solely relying on the medical vocational grids in determining that Fleming was not disabled. Fleming argues that "[w]ithout testimony or evidence from a vocational authority, the ALJ's finding that [Fleming's] significant non-exertional limitations have little or no effect on the occupational base of unskilled light work is unsupported by thesubstantial evidence," citing *Allen v. Sullivan*, 880 F.2d 1200 (11th Cir. 1989) and *Stinson v. Astrue*, 2008 WL 731303 (M.D. Fla. Mar. 18, 2008). Doc. No. 26 at 2-3. Fleming also argues that once the ALJ found he could not perform his past relevant work that the burden shifted to the Commissioner to prove that he could engage in other types of substantial gainful employment. Doc. No. 26 at 3. However, the ALJ did not articulate any specific jobs that Fleming could perform and, consequently, there was no substantial evidence to support the

finding that Fleming could perform a wide range of jobs that are widely available in the national economy. Doc. No. 26 at 3.

The Commissioner maintains the ALJ utilized the correct legal standard in solely relying on the medical vocational grids to find that Fleming was not disabled because the "ALJ made a specific finding that [Fleming's] additional limitations had little or no effect on the occupational base of unskilled light work." Doc. No. 25 at 2 (internal citation omitted). The Commissioner asserts that substantial evidence supports this finding because the medical vocational grids "take administrative notice solely of unskilled jobs in the national economy." Doc. No. 25 at 2-3. Relying on the definition of unskilled work in Social Security Ruling 96-9p and *Clifton v. Astrue*, 298 F. Appx. 855 (11th Cir. 2008), the Commissioner concludes that the "limitation to unskilled work, as found in the Grids, fully accounts for [Fleming's] mental limitations." Doc. No. 25 at 3.

## IV. <u>LEGAL STANDARDS</u>

### A. THE ALJ'S FIVE-STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R, §§ 404.1520(a), 416.920(a). In *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citations omitted), the Eleventh Circuit explained the five-step sequential evaluation process:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled

> without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

The steps are followed in order. If it is determined the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

### B.     STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

When the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if it would have reached a contrary result as the finder of fact, or finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account both favorable and unfavorable evidence to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court must consider evidence detracting from

evidence on which Commissioner relied). However, the District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

### C. REMEDIES

Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). To remand under sentence four, the District Court must either find that the Commissioner's decision applies the incorrect law, fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or is not supported by substantial evidence. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (reversal and remand appropriate where ALJ failed to apply correct law or the ALJ failed to provide sufficient reasoning to determine where proper legal analysis was conducted) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)); *Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir. 1996) (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for District Court to find claimant disabled).

This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may also be entitled to an immediate award of benefits

where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985). The District Court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson*, 99 F.3d at 1089-92, 1095, 1098. Where the District Court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827, 829- 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[1]

## V. ANALYSIS

This case presents the recurring issue of whether the ALJ may rely exclusively on the medical vocational grids in determining whether a claimant is disabled, or whether a vocational expert is required. The decision in *Foote*, 67 F.3d at 1559, is instructive on the law:

> Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do . . . . The Secretary bears the burden of establishing that Appellant, who could not perform her past work, could perform alternative work in the national economy. Although this burden can sometimes be met through straightforward application of the Medical-Vocational Guidelines (the "grids"), the regulations regarding the implementation of the grids caution that they are only applicable under certain conditions. For example, the claimant must suffer primarily from an exertional impairment,

---

[1] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation). After a sentence-four remand, the District Court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

> without significant non-exertional factors . . . . Exclusive reliance on the grids is appropriate in cases involving only exertional impairments (impairments which place limits on an individual's ability to meet job strength requirements) . . . . <u>Pain is a nonexertional impairment</u> . . . . <u>Exclusive reliance on the grids is inappropriate when a claimant has a nonexertional impairment</u> <u>that significantly limits the claimant's basic work activities</u> . . . . <u>If the grids are inapplicable, the Secretary must seek expert vocational testimony</u>.

*Id.* (citations omitted) (emphasis added). Thus, *Foote*, 67 F.3d at 1559, directs that reliance on the medical vocational grids is appropriate when the claimant suffers primarily from an exertional impairment. Exclusive reliance on the medical vocational grids is inappropriate when the claimant has a non-exertional impairment that limits her basic work activities. *Id.*

In *Phillips*, the Eleventh Circuit stated that "'[e]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills.'" 357 F.3d at 1242 (quoting *Francis v. Heckler*, 749 F.2d at 1566 (emphasis in original)). In *Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989) (quoting *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. Unit A, March 1981)), the court stated that it is unnecessary to call a vocational expert to establish whether the claimant can perform work that exists in the national economy "'only when the claimant can clearly do *unlimited* types of light work . . . .'" *See also Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (same).

In the present case, the ALJ specifically found that Fleming suffers from the severe impairments of back, bipolar, anxiety and affective disorders, each of which necessarily requires an underlying finding that such conditions impact Fleming's ability to perform basic work activities. R. 11. Moreover, the bipolar, anxiety and affective disorders are non-exertional

impairments because they affect Fleming's ability to "meet the demands of jobs, other than strength demands." *Clopper v. Astrue*, 2010 WL 1141585 at *7 (M.D. Fla. Mar. 23, 2010). 20 C.F.R. § 404.1521 provides that an "impairment or combination of impairments is not severe if it does not significantly limit [an individual's] physical or mental ability to do basic work activities." Stated differently, an impairment is severe if it significantly limits a person's physical or mental ability to perform basic work activities.

The ALJ's finding that Fleming suffers from severe non-exertional impairments necessarily means that Fleming's physical or mental ability to perform basic work activities is significantly limited. As both *Phillips*, 357 F.3d at 1242 and *Foote*, 67 F.3d at 1559, direct, reliance on the medical vocational grids is inappropriate when the claimant has a non-exertional impairment that significantly limits his ability to perform basic work activities. The ALJ also found that Fleming's "residual functional capacity is consistent with a <u>minimally reduced range of light work</u>," but never explained what "minimally reduced" means. R. 16 (emphasis added). Yet, the ALJ concluded Fleming was not disabled because his "additional limitations have little or no effect on the occupational base of unskilled light work." R. 17.

It is difficult to reconcile the ALJ's finding that Fleming's ability to perform light work was "minimally reduced" with the apparent finding that Fleming could perform the full range of light work. These findings appear to be contradictory. In any event, the ALJ erred in relying exclusively on the medical vocational grids because Fleming could not perform <u>unlimited</u> types of light work. S*ee Phillips*, 357 F.3d at 1242. By finding Fleming can only perform a reduced range of light work, the ALJ necessarily found Fleming cannot perform an unlimited range of that category of work. This finding precludes exclusive reliance on the medical vocational grids.

The ALJ needed to receive testimony from a vocational expert regarding the effect of Fleming's non-exertional impairments on the availability of employment opportunities for him. Failure to do so constitutes reversible error. *See Foote*, 67 F.3d at 1559; *Phillips*, 357 F.3d at 1242; *Allen*, 880 F.2d at 1202.

## VI. <u>CONCLUSION</u>

Based on the foregoing:

1. The final decision of the Commissioner is **REVERSED**, pursuant to sentence four of Section 405(g) because the ALJ erred by relying exclusively on the medical vocational grids;

2. The case is **REMANDED** for further proceedings; and

3. The Clerk is directed to close the case.

**DONE** and **ORDERED** in Orlando, Florida on September 15, 2011.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests the Clerk
Mail or Deliver Copies of this Order to:

Bradley K. Boyd, Esq.
Marianne S. Hoke, Esq.
Bradley K. Boyd, P.A.
Suite D
1310 W. Eau Gallie Blvd.
Melbourne, FL 32935

John F. Rudy, III
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida 33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
Christopher G. Harris, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

The Honorable Dean W. Determan
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR Hearing Ofc.
Ste. 1550 New River Ctr.
200 E. Las Olas Blvd.
Ft. Lauderdale, FL  33301